UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Action No. 6: 04-73-S-DCR |
| ) | |
| V. ) | |
| ) | |
| VERNON MARSEE, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the parties' briefs regarding the issue of whether Defendant Vernon Marsee is competent to stand trial. The parties' initial briefs were filed on April 11, 2006. Counsel for the Defendant then filed a reply brief April 18, 2006. Having reviewed these materials as well as the reports of the examining psychologists, and being otherwise sufficiently advised, the Court finds that the Defendant is competent to stand trial, provided that certain accommodations are made during the course of trial.

**I.    BACKGROUND**

On October 7, 2004, Benny Neeley was indicted for engaging in a continuing criminal enterprise ("CCE"), conspiracy to distribute over 100 kilograms of marijuana and conspiracy to commit money laundering. On February 24, 2005, a superceding indictment was returned adding Vernon Marsee and Teri Marsee to the above referenced counts.[1] Subsequently, on May 18, 2005, counsel for Vernon Marsee moved the Court to order a competency evaluation for his

---

[1]   Teri Marsee was not included in the CCE count.

client. The Court granted the motion and ordered that an evaluation of Vernon Marsee be performed at a facility to be designated by the Attorney General.

An examination was conducted at the Federal Medical Center in Lexington, Kentucky by Karen Milliner, a Forensic Psychologist, and Michael Helvey, Chief Psychologist at the facility. Their report was filed on November 8, 2005. In the report, the psychologists noted that they performed a number of psychological tests on the Defendant but were "unable to directly confirm or disconfirm the veracity of the reported amnesia for the period of the alleged offense." [Drs. Milliner/Helvey Report, p. 7]  They noted that the Defendant reported amnesia for approximately seven years prior to the injury (gunshot wound to the head) and two months following the injury. [Drs. Milliner/Helvey Report, p. 4]  The report further indicates that the Defendant specifically stated that he had no recollection of the time period during which the events alleged in the indictment took place. [Drs. Milliner/Helvey Report, p. 4]

Drs. Milliner and Helvey opined that "such an extensive period of amnesia is not probable, and is not common even among persons suffering traumatic brain injury, but it is certainly possible." [Drs. Milliner/Helvey Report, p. 7]  However, they noted that the "[p]sychological testing provided no indication that Mr. Marsee was feigning or intentionally exaggerating his cognitive impairments." [Drs. Milliner/Helvey Report, p. 7]

Regarding the issue of the Defendant's competency to stand trial, Dr. Milliner and Dr. Helvey concluded that Marsee was "not currently suffering from a mental disease or defect rending him mentally incompetent to the extent he is unable to understand the nature and

consequences of the proceeding against him or properly assist in his defense.[2]" [Drs. Milliner/Helvey Report, p. 13] Specifically, they opined that, assuming that the Defendant's memory for the alleged offenses is not essential to the proceedings, he is competent to stand trial. [Drs. Milliner/Helvey Report, p. 13]

After reviewing Dr. Milliner and Dr. Helvey's report, counsel for the Defendant filed a motion for a second psychological evaluation. The parties agreed to an evaluation by C. Christopher Allen, a licensed clinical psychologist. Dr. Allen examined the Defendant and filed his report on February 29, 2006. He noted that the Defendant had "an adequate general understanding of the charges against him, as well as of possible penalties that he may face should he be convicted." [Dr. Allen Report, p. 5] However, Dr. Allen opined that the Defendant's "ability to participate meaningfully in his own defense [was] compromised by two factors." [Dr. Allen Report, p. 5] Specifically, he noted that:

> [Marsee's] inattention and inability to immediately recall new information greatly decreases his ability to attend to and retain information presented in court, as well as by his legal counsel. This greatly decreases his attorney's ability to mount an appropriate defense in his behalf, as well as Mr. Marsee's ability to evaluate court proceedings and make appropriate decision. Significant accommodations would be necessary in order for Mr. Marsee to have an adequate understanding of the proceedings in order to make rational judgments with regard to the legal proceedings in this case . . . A second, and perhaps more important factor, affecting the patient's competency to stand trial is his lack of memory for the period of time which the alleged offenses occurred.

Dr. Allen acknowledged that "retrograde amnesia of six to eight years as reported by Mr. Marsee is extremely unusual." [Dr. Allen Report, p. 5] However, he specifically noted that, Count 1 of

---

[2]   The examiners also concluded that the Defendant was not suffering from a severe mental disease or defect rendering him unable to appreciate the nature and quality or the wrongfulness of his acts.

-3-

the indictment is alleged to have occurred approximately one month following the gunshot wound and that the Defendant's inability to recall information regarding that count is "quite predictable" given the severity of the gunshot wound. [Dr. Allen Report, p. 5]  Dr. Allen conceded, however, that "Mr. Marsee's report regarding his symptoms and period of amnesia . . . could conceivably contain elements of exaggeration." [Dr. Allen Report, p. 5]  Based on these findings, Dr. Allen concluded that:

> [the Defendant's] competency to stand trial should be considered questionable at best based upon his inability to appropriately participate in his own defense both in terms of reduced attention, memory and problem-solving within the context of court proceedings themselves, as well as his viable contention of an inability to remember facts surrounding the criminal activity secondary to his gunshot wound to the head in February of 2004, and particularly event following his incident.

[Dr. Allen Report, p. 5]

On March 21, 2006, the Court held a scheduling conference to discuss dates upon which to conduct a competency hearing. At that time, the parties advised the Court that they were willing to rely on the reports prepared by the psychologists who evaluated the Defendant. The parties further requested that they be allowed to file briefs on the issue of the Defendant's competency. They agreed that the matter would then be submitted to the Court for a determination on the issue of the Defendant's competency to proceed to trial. The matter is now ripe for review.

**II.   ANALYSIS**

If a court finds by a preponderance of the evidence that a defendant is mentally incompetent, that defendant may not stand trial. 18 U.S.C. § 4241. In *Dusky v. United States*, 362 U.S. 402 (1960), the Supreme Court set forth a two-prong test for determining whether a

defendant is competent to proceed to trial. The Court must consider "(1) whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding; and (2) whether he has a rational as well as factual understanding of the proceedings against him." *Id.*; *see also Dye v. Cowan*, 472 F.2d 1206, 1207 (6th Cir. 1972); *Filiaggi v. Bagley*, ____ F.3d ____, 2006 WL 954188 (6th Cir. April 14, 2006) (citing *Dusky*, 362 U.S. at 402).

Here, the court must determine whether the Defendant's memory loss renders him unable to satisfy the two-prong test of *Dusky*. As a general rule, amnesia (or memory lapses) which prevents a defendant from recalling the events for which he is charged will not automatically render him incompetent to stand trial. *See Dye*, 472 F.2d 1206; *see also United States v. Doke*, 171 F.3d 240, 248 (5th Cir. 1999) (amnesia by itself does not render a defendant incompetent); *Davis v. Wyrick,* 766 F.2d 1197, 1202 (8th Cir. 1985) ("[a]mnesia alone is not a bar to the prosecution of an otherwise competent defendant"); *United States v. Borum,* 464 F.2d 896, 900 (10th Cir. 1972) (rejecting the argument that trying an amnesiac defendant is a per se deprivation of due process); *United States v. Stevens,* 461 F.2d 317, 320 (7th Cir. 1972) (stating that "we do not believe that due process requires that every defendant who claims loss of memory go free without trial"); *United States v. Sullivan,* 406 F.2d 180, 186 (2nd Cir. 1969) (refusing to hold that memory loss "is in all cases an automatic bar to prosecution for a crime amply established by competent evidence on trial"); *Wilson v. United States,* 391 F.2d 460, 464 n. 4 (D.C. Cir. 1968) (noting that a defendant's awareness of his whereabouts and activities at the time of the crime is not an essential ingredient of competence).

Some courts have listed specific factors for the court to consider in making this fact-specific competency determination. These factors include, but are not limited to,[3] the following: (1) whether the defendant has any ability to participate in his defense; (2) whether the amnesia is temporary or permanent; (3) whether the crime and the defendant's whereabouts at the time of the crime can be reconstructed without his testimony; (4) whether the government's files will be of assistance in preparing the defense; (5) whether there is strong evidence demonstrating that the amnesia is real and not feigned; and (6) whether the government's case is strong or weak. *See United States v. Villegas*, 899 F.2d 1324, 1341 (2nd Cir. 1990); *United States v. Swanson*, 572 F.2d 523, 526-27 (5th Cir. 1978)*; United States v. Rinchack*, 820 F.2d 1557, 1569 (11th Cir. 1987). While these factors have a bearing on whether an amnesiac defendant is competent to proceed to trial, no particular set of factors is determinative. Rather, the court must engage in a fact-specific inquiry which encompasses a review of the totality of the circumstances and varies depending on the crime and the circumstances of each individual case. *Dye*, 472 F.2d 1206; *see also Swanson*, 572 F.2d at 526; *Sullivan*, 406 F.2d at 180; *Stevens*, 461 F.2d at 319-20, *cert. denied*, 409 U.S. 948 (1972); *U. S. ex rel. Parson v. Anderson*, 481 F.2d 94 (3rd Cir. 1973),

---

[3]  In *Wilson,* the District of Columbia Circuit listed a different set of facts. Specifically, court stated that, in determining whether a defendant's memory loss precludes his prosecution, the trial court should consider: (1) the extent to which the amnesia affected the defendant's ability to consult with and assist his lawyer; (2) the extent to which the amnesia affected the defendant's ability to testify on his own behalf; (3) the extent to which the evidence in the suit could be extrinsically reconstructed in view of the defendant's amnesia, including evidence relating to the crime itself as well as any reasonably possible alibi; (4) the extent to which the government assisted the defendant and his counsel in that reconstruction; (5) the strength of the prosecution's case; and (6) any other facts and circumstances that would indicate whether or not the defendant had a fair trial. *Id.*

*cert. denied*, 414 U.S. 1072 (1973); *Dhaemers v. Minnesota*, 456 F.2d 1291 (8th Cir. 1972); *Borum*, 464 F.2d at 898-99.

In the present case, both examining psychologists agree that the Defendant has an adequate understanding of the charges against him as well as an understanding of the possible penalties he may face if convicted. Specifically, Drs. Milliner and Helvey noted that:

> during legally focused interviews with the examiner over the course of the evaluation, Mr. Marsee verbalized a factual and rational understanding of his pending legal proceedings. Mr. Marsee expressed a good understanding of basic legal concepts and the nature of legal proceedings in general, and demonstrate an ability to apply this knowledge to the facts of his own case. He spoke clearly, coherently, rationally, and sensibly about his case and there was no indication he would not be able to do so with his attorney. Despite his cognitive limitations, there was no real indication from the information gathered [that] Mr. Marsee does not possess sufficient understanding of his legal situation, reasoning ability or capacity for communicating with his attorney to establish his present competency.

[Drs. Milliner, Helvey report, p. 10] Similarly, Dr. Allen found that:

> Mr. Marsee has an adequate knowledge of the legal system and understanding of court procedure so as to be competent to stand trial accounts against him. He, moreover, seems to have an adequate general understanding of the charges against him, as well as of possible penalties that he may face should he be convicted.

[Dr. Allen Report, p. 5] Likewise, both examiners agree that the Defendant has memory loss which affects his ability to recall at least some of the facts surrounding the alleged criminal activity. However, they acknowledge that they are unable to determine the extent of his memory loss. In contrast, the psychologists disagree regarding how the Defendant's memory loss affects his ability to assist in his defense and, ultimately, his competency to stand trial.

Drs. Milliner and Helvey concluded that, unless the court finds that the Defendant's memory for the alleged offense is essential to the proceedings, he is competent to stand trial.

[Drs. Milliner/Helvey Report, p. 13] In reaching this conclusion, Drs. Milliner and Helvey relied primarily on the fact that he "displayed a factual and rational understanding of the proceedings against him and demonstrated sufficient present ability to consult with his attorney with a reasonable degree of rational understanding." [Drs. Milliner/Helvey Report, p. 13] Drs. Milliner and Helvey noted that the Defendant has some cognitive impairments but that "the detrimental impact of these deficits" on his ability to stand trial can be alleviated by making accommodations for him. [Drs. Milliner/Helvey Report, p. 12]  Thus, Drs. Milliner and Helvey suggested, *inter alia*, that the Court take frequent breaks, slow down the proceedings, and educate the jury that Marsee's testimony could be impacted by his memory loss. [Drs. Milliner/Helvey Report, p. 13] Conversely, Dr. Allen opined that Mr. Marsee's competency to stand trial is "questionable at best." [Dr. Allen Report, p. 5]  He states that even with extensive accommodations, Marsee's lack of memory of the facts surrounding the alleged criminal activity calls into question his ability to assist in his defense. [Dr. Allen Report, p. 5]

Initially, the Court notes that a review of the psychologists' reports reveals that although the Defendant suffers from *some* memory loss, he may have exaggerated the *extent* of his memory loss.  Given that some of the alleged criminal activity is alleged to have occurred in close proximity of his gunshot wound, it is certain believable that the Defendant has no memory of *some* the facts surrounding that alleged criminal activity.  However, the Court questions whether he truly is unable to remember *any* facts relating to the alleged criminal activity.

The indictment charges that the alleged criminal activity occurred as early as January 2001, while the gunshot incident did not occur until February 2004.  Given the examiners

opinions that a period retrograde amnesia as alleged by the Defendant (for a period of six to eight years prior to the gunshot incident) is "extremely unusual" and "not probable," the Court finds that the Defendant *may* be exaggerating the extent of his memory. [Drs. Milliner/Helvey Report, p. 7; Dr. Allen Report, p. 5]

Even if the Defendant's reported loss of memory (i.e., for a period of six to eight years prior and two months following the gunshot incident) is a genuine loss of memory, the Court notes that the examiners' reports reveal that he understands the nature and consequences of the proceedings against him. Likewise, he has the present ability to communicate with his attorney and to discuss tactical trial decisions with him. While the Defendant's memory loss may prevent him from testifying at trial or providing his attorney with information that would form a defense, he is no more disadvantaged than other defendants who have either suffered memory loss or whose defenses may be impaired by other losses of evidence. *See Stevens,* 461 F.2d at 320 (endorsing view that an amnesiac's situation differs very little from a defendant who was home alone, asleep in his bed, at the time of the crime, or from a defendant whose only witnesses die or disappear before trial); *see also Anderson*, 354 F. Supp. at 1071-74 (the "defendant's recollection is only one of many sources of evidence which may permit the reconstruction of a past event and that extrinsic evidence far more valuable to the defense than the defendant's own testimony may be lost by reason of death, destruction or other fortuity prior to trial"), *aff'd,* 481 F.2d 94 (3rd Cir. 1973), *cert. denied,* 414 U.S. 1072 (1973).

In addition, the United States, through discovery, has provided defense counsel with substantial evidence[4] to support the charges contained in the indictment. Specifically, the United States has provided the interview summaries (DEA-6 interview reports) of several witnesses, including Tammie Thacker, Sherman McCulley, Sandra McCulley, Justin McCulley and Teri Webb. These reports indicate that, on several occasions, these individuals were directed by the Defendant (and his co-Defendants) to wire money to Brownsville, Texas and to receive packages which they believed contained marijuana. The United States has also provided documents including toll records, Western Union records, UPS records and other receipts. The United States claims that it will be able to prove at trial that for a period of over two years, the Defendant had associates, friends, and family members wire approximately $115,300 for the purchase of marijuana.

Counsel for the Defendant acknowledges that he has been provided with "substantial discovery" in this case, some of which implicate his client in the charges contained in the indictment. Specifically, he notes that some of the Western Union logs reflect that person named "Vernon Marsee" wired several thousand dollars to individuals in Brownsville, Texas. Moreover, he acknowledges that he has been provided with interview summaries from various witnesses, including alleged co-conspirators, that implicate Marsee. Although the Defendant

---

[4] One of the factors that the Court may consider in determining whether Marsee's amnesia renders him incompetent to stand is the strength of the United States case against him. However, as previously noted, no one set of factors is determinative of the issue. Rather, the court must engage in a fact-specific inquiry which encompasses a review of the totality of the circumstances. At this point, the Court cannot opine as to the strength of the government's case. Thus, the Court chooses not to discuss this factor. Moreover, a recent Supreme Court decision calls into question the constitutionality of this factor. *See Holmes v. South Carolina*, ___ U.S. ____, 126 S. Ct. 1727 (2006) (holding that a criminal defendant's federal constitutional rights are violated by an evidence rule under which the defendant may not introduce evidence of third-party guilt if the prosecution has introduced forensic evidence that, if believed, strongly supports a guilty verdict).

reportedly has no conscious memory of the alleged criminal activity, it appears that by using the evidence provided by the United States his counsel can reconstruct the alleged crime or crimes without his testimony. *See Anderson*, 354 F. Supp. 1060, 1071-74 (D. Del. 1972) (holding that the defendant's recollection is only one of many sources of evidence which may permit the reconstruction of a past even an that extrinsic evidence far more valuable to the defense than the defendant's own testimony), *aff'd,* 481 F.2d 94 (3rd Cir. 1973), *cert. denied,* 414 U.S. 1072 (1973). Counsel for the Defendant can conduct his own independent investigation and can cross examine the witnesses presented by the United States at trial and explore their knowledge of or participation in the scheme.

After reviewing the reports of the examining psychologists and the briefs of the parties, the Court finds that the Defendant possesses a "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has a "rational as well as factual understanding of the proceedings against him." *Dusky*, 362 U.S. at 402. Additionally, the Court finds that counsel for the Defendant has been provided sufficient evidence by the United States to reconstruct the events alleged in the indictment and to cross-examine witnesses at trial, even without the Defendant's specific recollection of events. While the Court acknowledges that the gunshot incident has left the Defendant with memory and information processing deficits, the Court does not believe that these deficits render him incompetent to stand trial.

The Court does find that the Defendant should be provided with reasonable accommodations to aid him at trial. While the Court acknowledges that Dr. Allen questioned whether any accommodations would assist the Defendant in understanding the court procedures,

the Court believes that the accommodations suggested by Drs. Milliner and Helvey are appropriate in this case. This Sixth Circuit has not addressed the issue of accommodations, but other courts have discussed it in the context of a defendant's competency to stand trial.

In *United States v. Glover*, 596 F.2d 857, 864-65 (9th Cir. 1979), the defendant had an intelligence level that fell at the lowest 1% of society, had memory problems, and suffered from a short attention span. Experts opined that the defendant would only be competent to stand trial if questions, terms, and proceedings were explained to him in very simple terms, using concrete examples. *Id.* at 865. The Ninth Circuit upheld a finding of competence, stating that "[t]he fact that a defendant might not understand the proceedings unless they are explained to him in simple language would put an additional burden upon counsel, but certainly does not establish that the defendant is incompetent to stand trial." *Id.* at 867; *see also United States v. Butterfly*, 1995 WL 729484, 72 F.3d 136 (9th Cir. 1995) (Despite expert testimony that the defendant's mental defects would prevent him from being able to interpret witness testimony, the defendant was found competent where the court "promised to proceed slowly and provide frequent breaks so that his attorney could explain the proceedings to him."). Likewise, the Court is persuaded by the reasoning of the Eleventh Circuit which stated that "[e]ven perfectly competent defendants often do not fully comprehend the intricacies of some of the defensive theories offered by their lawyers. That level of comprehension is not a requirement of competency." *See United States v. Hogan,* 986 F.2d 1364, 1373 (11th Cir. 1993). The Court will address specific accommodations to be made in this case at the pretrial conference to be held prior to trial.

**III.    CONCLUSION**

For the reasons discussed herein, it is hereby **ORDERED** as follows:

1.  The Court finds and concludes based on the foregoing analysis that Defendant Vernon Marsee is competent to stand trial.

2.  A final pretrial conference shall be held on Wednesday, **June 5, 2006**, beginning at the hour of **11:30 a.m.**, at the United States District Court in London, Kentucky. Trial by jury shall commence on **June 20, 2006**, at **9:30 a.m.**, at the United States District Court in London, Kentucky. Counsel shall be present at 9:00 a.m.

This 22nd day of May, 2006.

Signed By:
*Danny C. Reeves*  DCR
United States District Judge